UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JONATHAN HAYTER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PHH MORTGAGE CORPORATION,<br><br>    Defendant. | Case No. 15-cv-03332-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Re: ECF No. 44] |

### INTRODUCTION

This dispute concerns the modification of a residential-mortgage loan. Plaintiffs Jonathan and Sandryna Hayter sought that modification from their mortgage lender, defendant PHH Mortgage Corporation, in 2012. Over the next year, PHH sent the Hayters letters related to that modification. These letters told the plaintiffs that, until modification was complete, their house might still be foreclosed upon. The plaintiffs now claim that, among other things, these letters constitute an actionable "intrusion upon seclusion." The defendant moves to dismiss that claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 44.)[1]

The parties have consented to magistrate jurisdiction. (ECF Nos. 4, 9.) This motion can be decided without oral argument. *See* Civil L.R. 7-1(b). The defendant's analysis throughout is

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER (No.15-cv-03332-LB)

accurate and persuasive and the court mostly agrees with it. The court grants the defendant's motion and dismisses the intrusion claim with leave to amend.

## STATEMENT

The plaintiffs own residential property in Brentwood, California.[2] Their mortgage loan on that property is held by defendant PHH Mortgage Corporation.[3] In 2012, facing financial hardship, the plaintiffs applied to PHH for a loan modification.[4] The plaintiffs claim that, in processing that request, PHH acted in ways that constitute the tort of "invasion of privacy by intrusion upon seclusion."[5]

The plaintiffs focus mainly on letters that PHH sent them in processing their modification request. They argue that these letters were actionably intrusive mostly because they "repeatedly and unlawfully threatened to foreclose" on the plaintiffs' home unless the plaintiffs accepted and began paying under a modified loan.[6] For example, the plaintiffs allege that in one such letter PHH wrote: "Please understand that all collection/foreclosure activity initiated will continue until the holder of your mortgage approves your request for a . . . [modification] and may require the first payment be received."[7] Another letter allegedly told the plaintiffs that, "to suspend foreclosure proceeding[s]," they had to accept and start paying under the modified loan's "trial period plan."[8] With this same letter, the plaintiffs say, "PHH misrepresented that 'suspension of foreclosure proceedings is not guaranteed . . . .'"[9] The plaintiffs do not allege that, apart from repeatedly "threaten[ing] foreclosure," the letters were in any other way obnoxious. They do not allege that

---

[2] *See* 1st Am. Compl. ("FAC") – ECF No. 42 at 2 (¶ 4).

[3] *Id.* at 2 (¶ 5).

[4] *Id.* at 2 (¶¶ 7). The FAC never says whether the plaintiffs actually fell behind on their original loan payments; that is the implication, but, strictly speaking, the FAC never expressly says this.

[5] *Id.* at 6-8 (20-28). The plaintiffs make other claims that are not involved in this analysis.(*Id.* at 8-12.)

[6] *See, e.g.,* ECF No. 46 at 6 (quoting FAC – ECF No. 42 at 3 [¶ 9].)

[7] FAC – ECF No. 42 at 3 (¶ 9).

[8] *Id.* at 4 (¶ 11).

[9] *Id.*

the defendant called them or visited their home. They do not allege that the defendant contacted third parties regarding their loan.[10]

Both in the intrusion-upon-seclusion claim, and in other independent claims (not involved in this analysis), the plaintiffs contend that, in handling their modification request, PHH violated provisions of California's Homeowner Bill of Rights ("HBOR").[11]

## GOVERNING LAW

**1. Rule 12(b)(6)**

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

---

[10] For these last three points, see *id., passim*.

[11] For allegations related to the intrusion claim, see *id.* at 5, 7 (¶¶ 13-15, 23).

**2. Invasion of Privacy by Intrusion Upon Seclusion**

In California law, the claim for intrusion upon seclusion "has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Group W. Prods., Inc.* 18 Cal. 4th 200, 232 (1998). The first question is thus "whether defendants intentionally intruded, physically or otherwise, upon the seclusion of another." *See id.* (quotation omitted). "[T]o prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." *Id.* The intrusion must be intentional. *E.g., Varnado v. Midland Funding, LLC*, 43 F. Supp. 3d 985, 992 (N.D. Cal. 2014). In determining the "offensiveness" of a challenged intrusion, courts consider, among other things, "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. 1997) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 26 (1994). "The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Shulman*, 18 Cal. 4th at 232; *accord, e.g., Taus v. Loftus*, 40 Cal. 4th 683, 730 (2007), *overruled on other grounds by Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811 (2011).

## ANALYSIS

**1. Intrusion**

The court declines to decide whether, on the first head of the governing analysis, PHH's letters constituted an actionable "intrusion." Even if they did, on the FAC's allegations, the plaintiffs could not have had a "reasonable expectation of privacy" that made PHH's letters "highly offensive." *See infra,* Part 2.

**2. Highly Offensive Conduct & Reasonable Expectation of Privacy**

**2.1 The Letters' Foreclosure "Threats"**

Consider first the content of the letters. Consider, in particular, their "threats" that, if a modification was not completed, the plaintiffs could still face foreclosure. In one example of a statement that the plaintiffs challenge as tortiously "threatening," PHH allegedly wrote: ""Please understand that all collection/foreclosure activity initiated will continue until the holder of your mortgage approves your request for a" modification "and may require the first payment be received." (FAC – ECF No. 42 at 3 [¶ 9].) Other challenged statements are basically similar, warning the plaintiffs that, unless a loan modification was accepted, and possibly until payments were made under that modified loan, foreclosure remained possible. (*See id.* at 4 [¶ 11].)

These statements are not themselves objectively offensive. They read like prudent warnings about the circumstances facing the plaintiffs. They read even like the cautionary statements that regulations often make mandatory. Furthermore, these warnings — that, failing a successful loan modification, foreclosure might yet come — cannot alone quicken an intrusion claim. One could easily imagine the lawsuit that challenged lenders' *not* making such statements in this context. The law will not consciously write a rule that whipsaws actors in a "Damned if you do, damned if you don't" bind. If "threats to foreclose" can support an intrusion claim — as, indeed, they can, *see, e.g., Inzerillo v. Green Tree Financing, LLC*, 2014 WL 134715 (N.D. Cal. Apr. 3, 2014); *Rowland v. Bank of Am., N.A.,* 2014 WL 992005 (N.D. Cal. Mar. 12, 2014) — then the surrounding circumstances, the other facts that augment and themselves partly constitute intrusion, must be different from what they are here. The letters in this case were not themselves "highly offensive." They do not themselves suggest that PHH had a "motive[]" or "objective[]" other than accurately reminding the plaintiffs that foreclosure remained possible. *See Deteresa*, 121 F.3d at 465 (quoting *Hill,* 7 Cal. 4th at 26) (alleged intruder's "motives and objectives" affect "offensiveness" analysis).

**2.2 The Context in Which the Letters Rest**

The letters are still less objectionable when viewed in context. The plaintiffs recognize that, in determining whether an alleged intrusion is actionably offensive, "actions must be evaluated in the

context, conduct[,] and circumstances surrounding the intrusion." (ECF No. 46 at 9); *accord Deteresa*, 121 F.3d at 465 (quoted in *McFaul v. Bank of Am., N.A.*, 2014 WL 232601, * 4 n. 28 (N.D. Cal. Jan. 21, 2014)). Here, as a matter of law, given the context and surrounding circumstances, it cannot be said that PHH's letters were tortiously intrusive. This may be the central part of this analysis. First, the plaintiffs initiated contact with PHH. They sought a loan modification and PHH sent the challenged letters in the course of working through that modification. Moreover, PHH did not contact the plaintiffs other than through the letters. The defendant did not call the plaintiffs by phone; it did not visit their property. Neither did PHH contact, or threaten to contact, third parties about the plaintiffs' situation. The FAC makes no such allegations.

The court thinks that, in this context, letters were the least intrusive method that PHH could have used to contact the plaintiffs. If this route was barred to PHH, then it is hard to imagine how the lender could have communicated with the plaintiffs, how it could have processed the loan modification that the plaintiffs had asked for. The letters were unobjectionable save for their (dry and accurate) caution that foreclosure remained a possibility. That possibility was undoubtedly something that the plaintiffs did not like being reminded of. But, given the "context, conduct[,] and circumstances surrounding" the letters, the foreclosure warnings did not make the letters "highly offensive" within the meaning of this doctrine.

### 2.3 Other Alleged Statutory Violations

The intrusion claim also points to other alleged statutory violations, other ways in which PHH supposedly mishandled the plaintiffs' loan-modification application, and so violated HBOR, to make the correspondence actionably intrusive. (FAC – ECF No. 42 at 3-5 [¶¶ 9-11, 13-15].) The plaintiffs take the same approach in their briefing. (*See* ECF 46 at 10.) Their intrusion claim thus alleges that, by recording foreclosure-related notices, PHH engaged in impermissible "dual tracking." (*See* FAC – ECF No. 42 at 3-4 [¶¶ 9-10].) It also alleges that PHH failed to meet HBOR's "single point of contact" requirements and otherwise violated HBOR. (*Id.* at 5 [¶¶ 13-15].) It is not entirely clear how all these claimed infractions are meant to be embodied in the

challenged letters — or by themselves to constitute actionable intrusion (the latter being a different line of approach that the plaintiffs do not explicate).

These allegations of additional statutory failures do not make the letters tortiously intrusive. At least, they do not in the context of this case. These things may constitute other violations in their own right. (The plaintiffs cite the alleged HBOR violations in their independent claims for negligence, negligent training and supervision, and under California's Unfair Competition Law. [*Id.* at 9-12 (¶¶ 35-45, 50-52)].) And, in some cases, it will be relevant to note the ways in which objectively offensive conduct violates laws other than the intrusion-upon-seclusion doctrine. But, in these circumstances, as described above, when the challenged communications were initiated by the plaintiffs and were in no other way offensive — when no independent *facts* (as opposed to other, loosely related, alleged legal consequences) impugn the correspondence — the plaintiffs cannot jury-rig an intrusion claim by tacking on other alleged statutory failures. That would be a kind of bootstrapping and raw conjuring.

### 3.  Analogies

The plaintiffs point to four cases to support their intrusion claim. They mainly argue that, in these cases, "threats of foreclosure" were deemed "evidence of intrusion." (*See* ECF No. 46 at 4-5, 9-10.) The court shares the defendant's assessment of these cases. (*See* ECF No. 4-7.) They are all significantly different from this case. They all involved either actual, physical intrusions, unlike this case, or behavior that was much more egregious than anything alleged here. None of these cases suggests that the present plaintiffs' intrusion claim is minimally viable.

This court's decision in *Rowland v. JPMorgan Chase Bank, N.A.,* 2014 WL 992005 (N.D. Cal. Mar. 12, 2014) is too different from this case to support the plaintiffs' position. There, the plaintiffs were "timely" on their payments, so that the defendant bank sought to collect amounts that were not owed. *See id.* at *1-*3, *12. The bank persisted in this for at least 20 months. *See id.* at *3. During that time, it made "repeated collection calls," as well as "upsetting home visits," and "[a]t least one . . . collection agent exhibited bullying behavior toward" the plaintiff. *Id.* at *2, *11. No similar conduct is alleged here.

The defendant in *McFaul v. Bank of Am., N.A.,* 2014 WL 232601 (N.D. Cal. Jan. 21, 2014) attempted collection and foreclosure after the subject loan was fully paid off. *See id.* at *1 and n. 8, *4. That may already be enough to effectively separate *McFaul* from this case. Furthermore, and unlike this case, the *McFaul* defendant visited the plaintiff's home 39 times, and made over 100 phone calls across three years to collect the non-existent debt. *Id.* at *4. That is nothing like this case.

The decision in *Inzerillo v. Green Tree Servicing, LLC,* 2014 WL 1347175 (N.D. Cal. Apr. 3, 2014), lends the plaintiffs no effective support. The *Inzerillo* defendant wrongly had the plaintiff's mother's name on the subject debt; called the plaintiff's mother concerning the debt; called the plaintiff "at least 6 times a day and at all hours"; threatened to and, on three occasions, did call the plaintiff's tenant "regarding [the plaintiff's] mortgage." *Id.* at *1. No such conduct is alleged here. *Inzerillo* is too different to serve the plaintiffs as an effective analogy.

Finally, the plaintiffs observe that a "single phone call" was held to be sufficiently intrusive in *Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474 (E.D. Pa. 2007). That is slightly inaccurate; *Diaz* involved two phone calls. More significant, those calls involved offensive behavior that goes well beyond anything that the FAC alleges here. For example, the *Diaz* plaintiff did not owe the debt in question; apparently, it belonged to her (perhaps former) boyfriend. *See id.* at 475. The collection agents who called her claimed that they had a "Summons for over $100,000" against her and that she faced the "imminent confiscation" of her property. *Id.* at 475-76. The initial callers would not give their names or other information, but told the *Diaz* plaintiff that only a certain lawyer could halt the confiscation. *Id.* When she called this lawyer, he was roundly abusive. He insisted that she give him her checking account number; told her that, if she did not, her "baby [would] sleep on the floor tonight"; asked her whether she was "ashamed"; told her that her boyfriend had "five other girlfriends"; and suggested that she should be "afraid of getting AIDS." *Id.* at 476. The conduct of the collection agents in *Diaz* was thus objectively highly offensive, extortive, and (as the *Diaz* court wrote) "outrageous." *Id.* at 480. It was vastly more egregious than anything alleged here.

### 4. Conclusion

The court holds that, in these circumstances, the plaintiffs could not have had an "objectively reasonable expectation of privacy" such that PHH's letters could be considered "highly offensive to a reasonable person." *See Shulman*, 18 Cal. 4th at 232. If they did, then every lender who, in considering a loan-modification request, accurately reminds a defaulting mortgage-loan borrower that foreclosure remains possible, but does not otherwise engage in objectively offensive conduct — then by that dry reminder every such lender will have committed a *prima facie* tort. The court does not see how that can be the law.

### 5. Leave to Amend

The defendants argue that the dismissal should be without leave to amend. (ECF No. 44 at 3.) They contend that the plaintiffs "cannot truthfully amend [the FAC] to cure [its] defects." (*Id.*) The court disagrees. The material before it does not permit the court to conclude that the plaintiffs "could not possibly" cure their FAC by alleging other facts. The court does not know the universe of relevant facts. Nothing in the FAC's allegations, or in the governing law, rules out the possibility that the plaintiffs know other facts, not yet alleged, that would save their intrusion claim. The court is thus dismissing the intrusion-upon-seclusion claim with leave to amend. *See, e.g., Dauven v. U.S. Bancorp.*, 2014 WL 2949329, *1 (D. Or. June 30, 2014) ("[T]he Ninth Circuit has made clear that when a plaintiff fails to state a claim, '[l]eave to amend should be granted unless the pleading "could not possibly be cured by the allegation of other facts . . . ."'") (citing *Alcala v. Rios,* 434 F. App' x 668, 670 (9th Cir. 2011) (quoting in turn *Ramirez v. Galaza,* 334 F.3d 850, 861 (9th Cir. 2003)).

# CONCLUSION

The court grants the defendant's motion. The plaintiffs' intrusion-upon-seclusion claim is dismissed with leave to amend. The plaintiffs have 28 days from the date of this order to amend their intrusion claim. If they do not, then the dismissal will be with prejudice.

The plaintiffs have also "stipulate[d] to the dismissal of" their wrongful-foreclosure claim. (ECF No. 46 at 2.) That claim is dismissed.

This disposes of ECF No. 44.

**IT IS SO ORDERED.**

Dated: July 19, 2016

_____
LAUREL BEELER
United States Magistrate Judge